**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0194-24

JASPER FRAZIER,

      Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____

Submitted January 28, 2026 – Decided March 13, 2026

Before Judges Paganelli and Jacobs.

On appeal from the New Jersey Department of Corrections.

Jasper Frazier, self-represented appellant.

Jennifer Davenport, Acting Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Andrew D. Spevack, Deputy Attorney General, on the brief).

PER CURIAM

Jasper Frazier appeals from a final agency decision of the New Jersey Department of Corrections (DOC) that denied his claim for lost property. Because Frazier fails to sustain his burden to establish the DOC's decision was arbitrary, capricious, or unreasonable, and there was sufficient evidence in the record to uphold the denial, we affirm.

We glean the facts and procedural history from the record. On January 22, 2024, Frazier was incarcerated at East Jersey State Prison (EJSP) and transferred to Northern State Prison (NSP). He states he "was only allowed to take an over[]night bag" and the remainder of his personal property was to "be ship[ped] at a later date." (Capitalization modified). Frazier claims that when his property arrived, on February 22, 2024, "several items w[ere] missing." (Capitalization modified). On April 12, 2024, Frazier returned to EJSP. On May 17, 2024, Frazier completed an "Inmate Claim For Lost, Damaged Or Destroyed Personal Property" form and claimed his "[M]oorish religion book" was missing. (Capitalization modified). He stated he was transferred to NSP and the "religious book was in [his] property" and when he "arrive[d] back to EJSP the religious book was gone." In response to the form's request for "documents supporting your claim, including receipts," Frazier stated, "see [a]ttachments [f]ederal lawsuit [a]pprove religion."

On August 8, 2024, the Business Manager disapproved the claim because Frazier: (1) failed to timely file his claim; (2) had no receipts or appraisal forms regarding the lost property; and (3) offered "[n]o proof of negligence on the part of staff." On November 6, 2024, an EJSP Associate Administrator denied the claim, and the matter was considered resolved.

On appeal, Frazier presents the following arguments: (1) DOC breached the Interstate Correction Compact between Indiana and New Jersey; (2) DOC was negligent in not preparing an inventory of his personal property in his presence; (3) DOC violated its rules of conduct by making "false or misleading statements"; (4) DOC negligently investigated his claim of lost property; and (5) he was lawfully in possession of the Moorish religion book in accordance with the Interstate Correction Compact between Indiana and New Jersey.[1]

---

[1] Frazier raises many arguments concerning issues that extend beyond the lost property claim on appeal. We decline to consider these issues. Appellate courts will normally not address issues that were not preserved before an agency. See State v. Robinson, 200 N.J. 1, 20 (2009) (explaining that "[i]t is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court . . . unless the questions . . . go to the jurisdiction of the trial court or concern matters of great public interest." (alteration in original) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973))); see also ZRB, LLC v. N.J. Dep't of Env't Prot., 403 N.J. Super. 531, 536 n.1 (App. Div. 2008) (applying the principle in Robinson and Nieder to appeals from administrative agency orders).

A-0194-24

"There are well-recognized principles governing the judicial review of administrative agency determinations. Appellate courts have 'a limited role' in the review of such decisions." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). We will not reverse a decision of an administrative agency unless it is shown to be "arbitrary, capricious or unreasonable or . . . not supported by substantial credible evidence in the record as a whole." Henry, 81 N.J. at 580.

> In determining whether agency action is arbitrary, capricious, or unreasonable, a reviewing court must examine:
>
> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

"The party challenging the agency action has the burden to show that the administrative determination is arbitrary, capricious or unreasonable." In re Renewal Application of TEAM Acad. Charter Sch., 247 N.J. 46, 73-74 (2021).

4

At the time[2] Frazier claims his property was lost, the regulations under

N.J.A.C. 10A:2-6.1 provided:

> (a) When an inmate claims the loss . . . of personal property . . . the inmate shall complete and submit the applicable form(s) for Inmate Claim For Lost, Damaged Or Destroyed Personal Property to the Administrator or designee.
>
> (b) The Administrator or designee shall submit the claim form(s) to the Correction Major or designee for investigation and preparation of a report. The investigation conducted by the Correction Major or designee shall consist of, but not be limited to:
>
> > 1.  Obtaining statements from the inmate, witnesses and correctional facility staff; and
> >
> > 2.   Verifying that the inmate was authorized to have and did in fact, possess the personal property named in the claim.
> >
> > 3.   Verification of possession of lost, damaged or destroyed personal property may be made by review of applicable documentation such as the IIS-1M Inmate Inventory Sheet maintained by the correctional facility (see N.J.A.C. 10A:1-11).
>
> (c) Upon completion of the investigation, the applicable form(s) and a copy of the investigative report shall be

---

[2]  The regulations were amended and effective January 5, 2026.  We quote the version of the regulations in effect when Frazier submitted the claim.

5

submitted to the Business Manager, or designee of the correctional facility for review.

(d) The Business Manager or designee shall review the applicable form(s) and the investigative report, and complete the Certification of Inmate Claim form indicating a recommendation to approve or deny the claim with substantiating reasons.

(e) The claim packet shall include all applicable form(s) and the investigative report. The claim packet shall be submitted by the Business Manager or designee to the Administrator for review and recommendation for approval or denial.

(f) Claims that are denied by the Administrator shall not be processed any further. In all cases of denial, the inmate shall be notified of the denial in writing by the Administrator with substantiating reasons.

. . . .

N.J.A.C. 10A:2-6.2 provided:

(a) The following factors shall be considered before recommending approval or disapproval of claims:

1. Whether the investigation revealed any neglect by the correctional facility;

2. Whether care was exercised by facility staff preventing property loss, damage or destruction;

3. Whether the inmate exercised care in preventing property loss, damage or destruction;

6

4. Whether it has been proven that the inmate was authorized to have and did, in fact, possess the item(s) named in the claim;

5. Whether sufficient information has been supplied by the inmate, including proper receipts, witnesses and investigative reports;

6. Whether the inmate submitted the claim in a timely manner;

7. Whether the loss or damage exceeds authorized amounts of correctional facility personal property limits;

8. Whether the personal property is considered contraband; and

9. Whether other reviewers recommended denial of the claim and the reasons therefor.

N.J.A.C. 10A:2-6.3 provided:

(a) It shall be the responsibility of the inmate to initiate a claim by completing the applicable form(s) for an Inmate Claim For Lost, Damaged or Destroyed Personal Property within 15 calendar days of the incident or discovery of the incident.

(b) Unless there are exceptional circumstances which require extending the investigative process, the claim form and accompanying documents shall be submitted to the Director,

7

Office of Fiscal Management within 30 days of
the filing of the claim by the inmate.

Given our well-established deference to administrative agencies, we are not convinced Frazier has established that the DOC's final agency decision was arbitrary, capricious, or unreasonable in denying his claim regarding the book. Instead, the record reveals Frazier's claim was not filed in a timely manner under N.J.A.C. 10A:2-6.3; see N.J.A.C. 10A:2-6.2(a)(6). Moreover, the record reflects the DOC followed the law and undertook investigative steps. However, Frazier failed to provide "proper receipts" to value the book. See N.J.A.C. 10A:2-6.2(a)(5). Further, Frazier offered no evidence of DOC's negligence. See N.J.A.C. 10A:2-6.2(a)(1). Under these circumstances, there is no basis for us to disturb the DOC's decision.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0194-24